UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AHMED ESMAIL MOHAMMED ALGHAZALI,<br><br>Petitioner,<br><br>v.<br><br>JOHN TSOUKARIS, et al.,<br><br>Respondent. | Civil Action No. 16-9055 (JLL)<br><br>OPINION |

**LINARES**, Chief District Judge:

Presently before the Court is the amended petition for a writ of *habeas corpus* of Petitioner, Ahmed Esmail Mohammed Alghazali, filed pursuant to 28 U.S.C. § 2241. (ECF No. 3). Following an order to answer (ECF No. 5), the Government filed a response to the Petition (ECF No. 12), to which Petitioner has replied (ECF Nos. 14). For the following reasons, this Court will deny the petition without prejudice.

## I. BACKGROUND

Petitioner, Ahmed Esmail Mohammed Alghazali, a native and citizen of Yemen who became a lawful permanent resident of the United States in May 1998. (ECF No. 12-1 at 4). In February 2009, however, he was convicted in the United States District Court for the Eastern District of Virginia of conspiracy to transport contraband cigarettes. (Id.). Petitioner received an eighteen month sentence. (Id. at 5). Following his release from prison, immigration officials took Petitioner into custody and placed him into removal proceedings in April 2010. (Id.). Petitioner was ordered removed in August 2010 and was deported to his home country of Yemen. (Id.).

1

Six years later, on April 30, 2016, Petitioner attempted to re-enter the United States in New York, but was not admitted as Petitioner did not possess a valid visa or other travel document. (Id. at 17). Petitioner was thus detained and placed into removal proceedings. (Id.). Based on a credible fear interview conducted in May 2016, Petitioner was placed in asylum proceedings before an immigration judge, which apparently remain pending at this time. (Id.). Petitioner also sought to reopen or have his prior removal order reconsidered, but the immigration court which entered that order denied his motion to reopen and for reconsideration in December 2016. (Id. at 4-12). Since his arrival in New York in April 2016, Petitioner has remained detained as an applicant for admission pursuant to 8 U.S.C. § 1225(b)(2)(A).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), *habeas* relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

## B. Analysis

### 1. Petitioner's requests for review of the decisions of the immigration courts

In his *habeas* petition, Petitioner presents two classes of claims. First, he presents a classic *habeas* claim in which he challenges the constitutionality of his ongoing immigration detention pending a decision in his removal proceedings, which this Court addresses in detail below. In his second class of claims, however, Petitioner addresses not his detention, but rather the decisions of the immigration courts and requests that this Court review the decisions of the various immigration courts finding him subject to deportation prior to his removal from this country in 2010 and finding that he failed to present a valid basis for reconsideration or reopening of his prior removal order during his current immigration proceedings. This Court will address this latter class of claims first.

In Petitioner's second class of claims, Petitioner essentially asks that this Court provide collateral, *quasi*-appellate review of the decisions of the immigration courts both in issuing his original removal order and in denying his requests to reopen or reconsider that order, all of which he asserts were made in error. Pursuant to 8 U.S.C. § 1252(a)(5), however, "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." This Court thus lacks jurisdiction review challenges to the immigration courts' entry of, or refusal to reconsider or reopen, an order of removal such as the one Petitioner received. *See Chuva v. Att'y Gen.*, 432 F. App'x 176, 177 (3d Cir. 2011). All of petitioner's claims challenging the decisions of the immigration courts to enter or refuse to review or reopen Petitioner's removal order must therefore be dismissed for lack of jurisdiction. *Id.*

3

## 2. Petitioner's Challenge to his Detention

In his remaining claims, Petitioner asserts that his ongoing detention is unconstitutional as it has become prolonged and he has not received a bond hearing, to which he asserts he is entitled under *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). The Government, however, contends that those cases are not applicable to this matter as Petitioner is being held as an inadmissible arriving alien, and is thus detained pursuant to 8 U.S.C. § 1225(b)(2)(A) rather than § 1226(a) or (c), which apply to aliens who are to be removed who have previously effected an entry into the United States. As Petitioner's entitlement to relief depends on the statutory basis for his detention, this Court must first determine that basis.

Petitioner contends that 8 U.S.C. § 1226 applies to all aliens subject to removal proceedings, regardless of whether they have entered the United States prior to being apprehended by immigration officials. Petitioner is mistaken. "While § 1226(c) controls the detention of aliens who have effected entry into this country [who are subject to removal proceedings], 8 U.S.C. § 1225(b)(2)(A) provides that an arriving alien is considered 'an applicant for admission' and that such applicants for admission must be detained for removal proceedings 'if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Gregorio-Chacon v. Lynch*, No. 16-2768, 2016 WL 6208264, at *2 (D.N.J. Oct. 24, 2016). While section 1225 does provide that the Government may under certain limited circumstances choose to parole such an alien such that he is released into the United States, even if an applicant for admission is released his legal status does not change and he is considered to remain held at the border and is thus not considered to have entered the United States. *Id.*; *see also Kay v. Reno*, 94 F. Supp. 2d 546, 554 (M.D. Pa. 2000). Thus, from the statutes it is clear that

§ 1226 does not apply to Petitioner – that statute applies only to aliens who have entered the United States awaiting a decision on whether they shall be removed, while § 1225 instead governs those who are considered never to have entered the United States because they were detained as applicants for admission. As Petitioner was detained as an applicant for admission upon his attempt to re-enter the United States after his previous removal, he is detained under § 1225, and not § 1226, and his entitlement to relief is limited by his status as an applicant for admission.

As one court in this district recently explained,

> Pursuant to the statutory and regulatory scheme, § 1225(b)(2)(A) essentially requires mandatory detention for aliens [deemed to be applicants for admission not clearly entitled to enter the United States]. 8 C.F.R. § 235.5(b)(2)(iii); *see also Tineo* [*v. Ashcroft*, 350 F.3d 382, 387 (3d Cir. 2003)]. Such aliens are not entitled to a bond hearing [before an immigration judge], *see, e.g.*, 8 C.F.R. § 1003.19(h)(2)(i)(B), but the statute does permit the Attorney General, through the Department of Homeland Security, to parole such aliens into the United States if "urgent humanitarian reasons or significant public benefit" so warrant. *See* 8 U.S.C. § 1182(d)(5)(A). This is the only parole relief contemplated by the statute and regulations. In addition, an immigration judge does not have authority to review the Attorney General's parole determination. 8 C.F.R. § 1003.19(h)(2)(i)(B).
>
> This statutory limitation means that an arriving alien, like Petitioner, does not receive a hearing to determine if the justifications of flight risk and danger to the community apply to his detention. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 1003.19(h)(2)(i)(B). As result, unless required by the Constitution, Petitioner is not entitled to release or bond hearing pursuant to the statutory scheme.

*Mancia-Salazar v. Green*, No. 17-147, 2017 WL 2985392, at *2 (D.N.J. July 13, 2017).

Because Petitioner is not entitled to relief from detention under the statutory and regulatory scheme, Petitioner would only be able to receive the bond hearing he seeks in this matter if the Due Process Clause so required. Petitioner is not the first applicant for admission to assert before this Court that he is entitled to a bond hearing under § 1225. In *Damus v. Tsoukaris*, No. 16-933,

2016 WL 4203816, at *2-4 (D.N.J. Aug. 8, 2016), this Court determined that while applicants for admission are treated as if they have never entered the United States and are not entitled to the same level of protections as aliens found within the United States, they are not wholly devoid of Due Process rights. *Id.* This Court explained as follows:

> To the extent that Petitioner asserts a constitutional claim for relief, such a claim would be affected by his status as an applicant for admission rather than an alien who has previously entered the country. *See, e.g., Maldonado v. Macias*, 150 F. Supp. 3d 788, 798-800 (W.D. Tex. 2015). Petitioner's status as an applicant for admission affects his right to Due Process because applicants for admission are subject to the "entry fiction" which provides that, for legal and constitutional purposes, an alien stopped at the border is considered to remain at the border even if he is paroled into the country, and is treated as such for the purpose of determining his rights to relief. *Id.*; *see also see also Kay*[, 94 F. Supp. 2d at 554] (describing the "entry fiction"). The distinction is not one without a difference, as the Supreme Court in *Zadvydas* observed that it "is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders," and that "once an alien [for legal purposes] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." 533 U.S. at 693. The Court has likewise suggested that even for those aliens found within the United States, "the Due Process Clause does not require [the Government] to employ the least burdensome means to accomplish [the removal of those aliens]." *Demore v. Kim*, 538 U.S. 510, 523 (2003). Indeed, "the Supreme Court has made clear that inadmissible aliens are entitled to less due process than are resident aliens." *Maldonado*, 150 F. Supp. 3d at 799 (citing *Demore*, 538 U.S. at 547 (O'Connor, J., concurring)). Indeed, as *Zadvydas* explained, an alien's treatment "as if stopped at the border" has historically been held sufficient to justify lengthy and seemingly interminable detention. 533 U.S. at 692-93 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). By all appearances, then, Petitioner, as an alien deemed an applicant for admission who is legally treated as if stopped at the border is entitled to something less than the full panoply of rights usually conferred by the Due Process Clause. *Cf. Rosales-Garcia v. Holland*, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) (holding that at least the substantive portion of the Due Process Clause must apply to even those aliens at the border as to

hold otherwise would permit the Government to "torture or summarily execute them" which would amount to an absurd proposition).

Thus, although Petitioner is likely not entitled to all the rights Due Process would provide an alien considered within this country, he has at least some entitlement to proper procedures. The question that arises, then, is whether mandatory detention *ad infinitum* comports with that entitlement. On this issue, however, neither the Supreme Court nor the Third Circuit has provided clear guidance. While the Third Circuit has not provided this Court with guidance as to whether indefinite detention under § 1225(b)(2)(A) comports with the Constitution, the Court has addressed a similar statutory provision in the form of § 1226(c). Like § 1225(b)(2)(A), § 1226(c) expressly provides that the Government shall take into custody those removable aliens who have been convicted of certain classes of offenses, and does not provide for a bond hearing once those aliens have been so detained. In *Diop*, however, the Third Circuit held that detention subject to § 1226(c) was subject to a reasonable time limitation as to interpret the statute to permit indefinite detention would run the risk of running afoul of the Due Process Clause. 656 F.3d at 231-32. Thus, as a matter of statutory interpretation and constitutional avoidance, the Third Circuit held that § 1226(c) authorized mandatory detention for only a reasonable period of time, after which the Government would be required to justify the alien's continued detention at an individualized bond hearing. *Id.* at 231-34.

Thus, the Third Circuit held in *Diop* that the federal courts, in determining whether an alien subject to mandatory detention under § 1226(c) was entitled to a bond hearing, must determine whether the length of his detention was "reasonable," which is a "function of whether it is necessary to fulfill the purpose of the statute." *Id.* at 234. Such a determination is a fact specific inquiry "requiring an assessment of all of the circumstances of a given case." *Id.* While the Court in *Diop* did not provide specific guidance as to the length of time which would cast doubt on the reasonableness of a given alien's detention, *see* 656 F.3d at 234; *see also Carter v. Aviles*, No. 13-3607, 2014 WL 348257, at *3 (D.N.J. Jan. 30, 2014), the Third Circuit provided further guidance in *Chavez-Alvarez*. In *Chavez-Alvarez*, the Third Circuit clarified that, at least where no evidence of bad faith on the part of the petitioner has been presented, "beginning sometime after the six-month timeframe [upheld by the Supreme Court in *Demore*, and certainly by the time [the petitioner] had been detained for one year, the burdens to [the petitioner's] liberties outweighed any justification

7

for using presumptions to detain him without bond to further the goals of the statute." 783 F.3d at 478.

Given this case law in regards to aliens present within this country subject to mandatory detention, the question here becomes whether the lesser amount of Due Process to which unadmitted aliens subject to the entry fiction are entitled requires that 1225(b)(2)(A) be interpreted to include a similar reasonableness limitation. Several Courts have held that the distinction between removable aliens present within this country and those not yet admitted and legally at the border is insufficient to warrant a difference in treatment, and that § 1225(b)(2)(A) is subject to a reasonable time limitation as a result. *See, e.g., Maldonado*, 150 F. Supp. 3d at 804-812; *Bautista v. Sabol*, 862 F. Supp. 2d 375, 377 (M.D. Pa. 2012); *see also Rodriguez v. Robbins*, 804 F.3d 1060, 1081-84 (9th Cir. 2015) (holding that aliens detained under §§ 1226(a), 1226(c), 1225(b)(2)(A), and 1231(a) are all entitled to a bond hearing after six months as all of those statutory provisions are subject to reasonable time limitations), *cert. granted sub nom., Jennings v. Rodriguez*, [136 S. Ct. 2489 (]2016). Other Courts have instead held that inadmissible aliens are treated differently from those subject to removal already present within this country, and therefore are not entitled to release on bond during the pendency of their removal proceedings. *See, e.g., Perez v. Aviles*, --- F. Supp. 3d ---, ---, 2016 WL 3017399, at * 3 (S.D.N.Y. 2016); *see also See Cardona v. Nalls–Castillo*, --- F.Supp.3d ---, ---, 2016 WL 1553430, at *1 (S.D.N.Y. Apr. 14, 2016); *Salim v. Tryon*, No. 13-6659, 2014 WL 1664413, at *2 (W.D.N.Y. Apr. 25, 2014) (LPR was lawfully detained during removal proceedings under § 1225(b)(2)(A)); *Ferreras v. Ashcroft*, 160 F.Supp.2d 617, 622–27 (S.D.N.Y.2001) (holding the same for LPR detained for over 15 months); *Viknesrajah v. Koson*, No. 09-6442, 2011 WL 147901, at *5–6 (W.D.N.Y. Jan. 18, 2011) (holding § 1225(b) authorized continued detention of alien in custody for over two years during pendency of removal proceedings); *but see Arias v. Aviles*, No. 15-9249, 2016 WL 3906738, at *3 (S.D.N.Y. July 14, 2016) (disagreeing with *Perez* and holding that § 1225(b)(2)(A) is subject to a reasonable time limitation).

Having weighed the lesser Due Process rights to which applicants for admission are entitled with the grave specter of interminable detention, this Court must conclude that the former class of cases better encapsulate the state of the law and that an alien's detention subject to § 1225(b)(2)(A) is subject to the limitation that his detention may continue only for a reasonable time at which point his continued detention would need to be warranted

8

> by more than a presumption based on his status as an applicant for admission alone. In so concluding, however, this Court does not agree with the Ninth Circuit's conclusion that the distinction between an alien detained pending removal who is already in this country and one who remains legally at the border as an applicant for admission is without difference. The level of Due Process protections to which the two classes are entitled is not equal, and any remedy fashioned for applicants for admission would have to uphold and continue the entry fiction even if those aliens were released on bond or under an order of supervision. The Court also notes that there are distinctions between § 1225 and § 1226 which also must be taken into account in fashioning a remedy – specifically, under § 1226, for removable aliens present in this country, detention subject to bond is the default rule and mandatory detention the exception, whereas § 1225 essentially sets nigh mandatory detention as the default rule with parole for humanitarian reasons the exception.

*Id.*

While this Court concluded in *Damus* that applicants for admission could not be held interminably based solely upon their applicant status and that § 1225 detention was subject to a reasonable time limitation, the "distinction in the level of protections between the [aliens detained under § 1226(c) and § 1225(b)(2)(A)] is one of magnitude rather than entitlement to relief – an alien who is legally considered to remain at the border has no right of entry into this country and is entitled to lesser protections than one who has already entered, and as such he may be held for a greater length of time before his continued detention raises Due Process concerns." *Id.* at *4. Based on that conclusion, this Court determined that, given the lesser protections applicable to § 1225 detainees, detention for just under a year was insufficient to warrant *habeas* relief, in the form of a bond hearing or otherwise. *Id.* Since this Court's ruling in *Damus*, several other courts within this District have reached similar conclusions. *See Gregorio-Chacon,* 2016 WL 6208264 at *4-5 (detention of six months under § 1225 not unreasonable); *see also Mancia-Salazar,* 2017

9

WL 2985392 at *4-5 (following *Damus* but finding detention of 18 months under § 1225 had become unreasonable under the facts at hand).

As neither the Supreme Court nor Third Circuit have spoken on the issue since this Court's ruling in *Damus*,[1] this Court reaffirms its conclusion that § 1225(b)(2)(A) detention is subject to a reasonable time limitation and that detainees held under the statute will be entitled to some relief should the length of their detention exceed a reasonable time, which in the § 1225 context occurs at some point beyond one year of detention. The Court also reaffirms, however, that detention of an alien pursuant to § 1225(b)(2)(A) will not become unreasonable until an alien has been held for a period of time well beyond the six to twelve month period applicable to § 1226(c) detainees under *Chavez-Alvarez* given the lesser level of protections to which an applicant for admission is entitled.

In this matter, Petitioner, who has previously been removed from this country following a criminal conviction, has been held by immigration officials for approximately fifteen months. Mindful of the fact that this Court has previously determined that detention under § 1225 approaching a year has yet to become unreasonable in light of the lesser level of Due Process rights applicants for admission possess, and given the factual particulars of Petitioner's case including his prior removal and criminal history, this Court concludes that Petitioner's detention has yet to become unreasonable. Petitioner is therefore not entitled to relief from detention at this time.

---

[1] In June 2016, the Supreme Court granted certification in *Jennings*, which was originally set to be heard in the October 2016 court term. In December 2016, the Supreme Court ordered the parties to provide additional briefing specifically addressing whether Due Process "requires that [§ 1225(b) detainees] be afforded bond hearings, with the possibility of release into the United States, if detention lasts six months" and whether the burden of proof in any bond hearing should be on the Government. *See Jennings v. Rodriguez*, 137 S. Ct. 471 (2016). The issue at the heart of Petitioner's challenge was thus squarely before the Court. The Supreme Court, however, did not decide *Jennings* before the conclusion of the October 2016 term, and it is thus likely that *Jennings* will be reargued during the Court's October 2017 term.

## III. CONCLUSION

For the reasons stated above, this Court will deny Petitioner's *habeas* petition without prejudice to the filing of another petition should the length of Petitioner's detention become unreasonable. An appropriate order follows.

JOSE L. LINARES
Chief Judge, United States District Court